UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
ROBERT FELDMAN,

                          Plaintiff,

   -against-

MALBA GARDENS OWNERS CORP., and
DIRECT MANAGEMENT CORP., and JAKE
DEMOSTHENOUS, individually,

                          Defendants.
-----------------------------------------------------------------------X

**COMPLAINT**

**Docket No.:**

**Jury Trial Demanded**

      Plaintiff, ROBERT FELDMAN, by and through his attorneys, BORRELLI & ASSOCIATES, P.L.L.C., as and for his Complaint against MALBA GARDENS OWNERS CORP. ("Malba Gardens"), and DIRECT MANAGEMENT CORP. ("Direct Management"), and JAKE DEMOSTHENOUS ("Demosthenous"), individually, (collectively as "Defendants"), alleges upon knowledge as to himself and his own actions and upon information and belief as to all other matters as follows:

### NATURE OF CASE

      1.    This is a civil action for damages and equitable relief based upon Defendants' willful violations of Plaintiff's rights guaranteed to him by: (i) the minimum wage provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206(a); (ii) the minimum wage provisions of the New York Labor Law ("NYLL"), NYLL § 652(1), 12 N.Y. Comp. Codes R. & Regs. ("NYCCRR") § 141-1.2 and § 141-1.3; (iii) the overtime provisions of the FLSA, 29 U.S.C. § 207(a); (iv) the NYLL's requirement that employers pay manual workers on at least as frequently as a weekly basis, NYLL § 191(1)(a); (v) the NYLL's requirement that employers furnish

employees with a wage notice containing specific categories of accurate information upon hire, NYLL § 195(1); and (vi) any other claim(s) that can be inferred from the facts set forth herein.

2. Plaintiff worked for Defendants - - two corporations that jointly manage the Queens residential apartment building in which Plaintiff worked, and Plaintiff's direct supervisor - - as a live-in superintendent from November 1, 2013 through September 8, 2017. Throughout Plaintiff's employment, in addition to his regular schedule of twenty-eight hours per week, Defendants required Plaintiff to be available and on call twenty-four hours per day, seven days per week. In exchange for his work, Defendants failed to pay Plaintiff *at any rate of pay for any hours worked*, including for his scheduled hours worked, which clearly falls far below the applicable minimum wage rates under the FLSA and NYLL.

3. Additionally, because Defendants failed to pay Mr. Feldman any wages, they also failed to pay him at the statutorily-required overtime rate of at least one and one-half times the minimum wage rate for all hours worked above forty each week, in direct violation of the FLSA.

4. Furthermore, throughout Plaintiff's employment, Defendants violated the NYLL by failing to pay Plaintiff, a manual worker, all of his wages owed on at least as frequently as a weekly basis.

5. Finally, Defendants also failed to provide Plaintiff with any wage notice at hire, let alone an accurate one.

## JURISDICTION AND VENUE

6. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et seq*. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

7. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

8. At all relevant times herein, Plaintiff worked for Defendants at Defendants' residential apartment building located at 10-31A Cross Island Parkway, Whitestone, New York 11357 ("the Building"), and was an "employee" entitled to protection as defined by the FLSA, the NYLL, and the NYCCRR.

9. At all relevant times herein, Defendant Malba Gardens is a New York corporation with its principal place of business located at 42-14 Astoria Boulevard, Astoria, New York 11103.

10. At all relevant times herein, Defendant Direct Management is a New York corporation with a principal place of business also located at 42-14 Astoria Boulevard, Astoria, New York 11103.

11. At all relevant times herein, Defendant Demosthenous was the President of Defendant Direct Management who supervised Plaintiff during his employment with Defendants. In that role, Defendant Demosthenous oversaw the day-to-day operations of the Building and managed all of Defendants' employees who worked there, including Plaintiff, regarding all matters such as determining employees' rates and methods of pay and hours worked, work schedules, and the distribution and assignment of work duties. Additionally, Defendant Demosthenous had the authority to approve all personnel decisions with respect to Defendant Malba Gardens, and in this capacity, he hired and fired Plaintiff.

12. At all relevant times herein, Defendants were Plaintiff's "employers" within the meaning of the FLSA and the NYLL. Additionally, the qualifying annual business of Defendants

3

Malba Gardens and Direct Management, either separately or together, exceeded and exceeds $500,000, and Defendants were and are engaged in interstate commerce within the meaning of the FLSA as Defendants jointly employed two or more employees, Defendants buy and use materials such as cleaning supplies and tools that have naturally moved across state lines, they hire and coordinate with outside vendors that have travelled across state lines to perform work within the Building, and they accept credit cards as a form of payment based on cardholder agreements with out-of-state companies, the combination of which subjects Defendants to the FLSA's minimum wage and overtime requirements as an enterprise.

## BACKGROUND FACTS

13. At all relevant times herein, Defendants Malba Gardens and Direct Management have operated, in effect, as a single enterprise to own and manage the residential Building. In that respect, these Defendants: operate from the same principal location; share and intermingle all employees; and are both managed on a day-to-day basis by Defendant Demesthenous who sets forth the terms of employment for all employees of either corporation.

14. In October 2013, Defendants hired Plaintiff to work as the live-in superintendent in the Building, a two-story building with sixteen apartment units.

15. Plaintiff commenced his employment with Defendants on November 1, 2013, and he worked for Defendants in that role until September 8, 2017.

16. Defendant Demosthenous personally hired and fired Plaintiff, supervised Plaintiff's work on a daily basis throughout Plaintiff's employment, set Plaintiff's hours, and issued Plaintiff a monthly utility stipend by a check drafted by "Malba Gardens c/o Direct Management Corp."

17. Plaintiff began residing in the Building, as Defendants required, when he started work on November 1, 2013, and he resided there throughout his employment.

18. Upon Plaintiff's hire, Defendants sent the Building's tenants a letter advising the tenants that they could contact Plaintiff for any maintenance-related emergencies, twenty-four hours per day, seven days per week.

19. As the live-in superintendent for Defendants, Plaintiff's primary duties - - indeed well more than 25% of his work - - consisted of performing general maintenance tasks for the Building. This included the daily responsibilities of fixing toilet clogs and pipe leaks, replacing light bulbs, performing trash removal services, painting and cleaning common areas, maintaining the landscaping, corresponding and directing the work of third-party contractors or vendors, driving to home improvement stores to purchase work supplies, repairing air conditioning and heating units, assisting tenants with lock-outs, shoveling snow during the winter, and handling any other residential repairs as needed twenty-four hours per day.

20. In his capacity as a superintendent, Defendants required Plaintiff to work a regular schedule of twenty-eight hours per week, from 8:00 a.m. to 12:00 p.m. noon, seven days per week. Additionally, Defendants required Plaintiff to work beyond his regular hours and remain on call and available to work twenty-four hours per day, seven days per week to address emergency situations after his regularly-scheduled shift ended, such as many of those listed in the prior paragraph, which could not be accomplished in a standard four-hour workday and which often required immediate attention.

21. Throughout his employment, neither Defendants nor any of Defendants' agents advised Plaintiff on any occasion that he was relieved from duty for a certain period of time. Rather, as referenced above, Defendants instructed Plaintiff and informed the tenants of the Building that Plaintiff would be available to the tenants twenty-four hours per day, seven days per week to address any concerns or emergencies.

5

22. Likewise, neither Defendants nor any of Defendants' agents provided Plaintiff with a period of time during which Plaintiff could engage in purely personal or private pursuits without the threat of being interrupted or called back to work. Indeed, Defendants often awoke Plaintiff in the middle of the night, after his scheduled hours and at all hours of the night, to tend to tenant concerns and emergency maintenance issues, such as toilet clogs, snow removal, pipe leaks, tenant lock-outs, and heating unit problems in the winter months that required immediate attention.

23. For his work as a superintendent, Defendants failed to pay Plaintiff *at any rate* of pay for any hours that Plaintiff worked per week, incorrectly asserting (or assuming) that the value of the apartment in which they required Plaintiff to live was sufficient compensation for Plaintiff's work.

24. By virtue of not paying Plaintiff *any* wages, Defendants also failed to pay Plaintiff, a manual worker, his wages owed on at least as frequently as a weekly basis.

25. By way of example only, during the week of February 3, 2015 through February 9, 2015, Defendants required Plaintiff to work, and Plaintiff did work, his regular hours of 8:00 a.m. to 12:00 p.m. every day for a total of twenty-eight hours. Additionally, Defendants required Plaintiff to be on call and engaged to work for the remainder of each day. Indeed, during his on-call time during this week, Defendants required Plaintiff to perform work past his scheduled hours, and Plaintiff did physically work eight additional hours for four days in a row during this week in order to shovel snow and salt the walkways due to there having been heavy snowfall on these days. Plaintiff also remained on-call for the remainder of the time during that week. Thus, adding up the hours that he worked for this representative workweek, Plaintiff worked sixty hours and was engaged to wait for the remainder of the time that week for a total of 168 hours. Defendants failed to pay Plaintiff *at any rate of pay* for any of his hours worked during this week.

26. Defendants also failed to provide Plaintiff with any wage notice at the time of his hire, let alone one that accurately listed any of the following: Plaintiff's regular rates of pay and basis thereof (e.g. hourly, daily, per shift); his regular payday; any allowance that Defendants claimed to be used towards his minimum wage, such as the value of the apartment unit that Plaintiff resided in during his employment, and/or any utility allowances that Defendants paid to him; his employers' name, physical address of their main office, mailing address if it differs, and telephone number; and any "doing business names" used by Defendants.

27. Defendants acted in the manner described herein so as to minimize their labor costs and overhead.

28. Each hour that Plaintiff worked or was engaged to wait to work was for Defendants' benefit.

### **FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Unpaid Minimum Wages Under the FLSA*

29. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

30. 29 U.S.C. § 206(a) prescribes a minimum wage that employers must pay to their employees for each hour worked.

31. As described above, Defendants are employers within the meaning of the FLSA, while Plaintiff is an employee within the meaning of the FLSA.

32. As also described above, Defendants did not compensate Plaintiff at the minimum hourly rate required by the FLSA for all hours worked.

33. Defendants willfully violated the FLSA.

34. At the least, Plaintiff is entitled to pay at the minimum wage rate of pay required by the FLSA for all hours worked.

35. Plaintiff is also entitled to liquidated damages and attorneys' fees for Defendants' violations of the FLSA's minimum wage provisions.

### SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
*Unpaid Minimum Wages Under the NYLL and the NYCCRR*

36. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

37. N.Y. Lab. Law § 652 and 12 NYCCRR § 141-1.3 prescribe a minimum wage that employers must pay to their employees in the building service industry for each hour worked.

38. N.Y. Lab. Law § 652 and 12 NYCCRR § 141-1.2 prescribe a minimum rate per unit in a building that employers must pay to their live-in superintendents on a weekly basis.

39. As described above, Defendants are employers within the meaning of the NYLL and the NYCCRR, while Plaintiff is an employee within the meaning of the NYLL and the NYCCRR.

40. As also described above, Defendants failed to compensate Plaintiff at the effective minimum hourly rate required by the NYLL and NYCCRR for all hours worked.

41. As further described above, Defendants did not compensate Plaintiff at the minimum rate per unit in the Building per week required by the NYLL and NYCCRR.

42. At the least, Plaintiff is entitled to pay at the minimum wage rate for all hours worked.

43. Plaintiff is also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NYLL's and NYCCRR's minimum wage provisions.

## **THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Unpaid Overtime Under the FLSA*

44. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

45. 29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times the minimum wage rate of pay for all hours worked exceeding forty in a workweek.

46. As described above, Defendants are employers within the meaning of the FLSA, while Plaintiff is an employee within the meaning of the FLSA.

47. As also described above, Plaintiff worked or was engaged to wait to work in excess of forty hours in a workweek, yet Defendants failed to compensate Plaintiff in accordance with the FLSA's overtime provisions.

48. Defendants willfully violated the FLSA.

49. Plaintiff is entitled to overtime pay for all hours worked or for which he was engaged to wait to work per week in excess of forty at the rate of not less than one and one-half times the minimum wage rate of pay.

50. Plaintiff is also entitled to liquidated damages and attorneys' fees for Defendants' violations of the FLSA's overtime provisions.

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Pay Timely Wages in Violation of the NYLL*

51. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

52. NYLL § 191(1)(a) requires employers to pay "manual workers" all wages owed on at least as frequently as a weekly basis.

53. As described above, throughout his employment, Plaintiff was a "manual worker" under the NYLL in that at least 25% of his work was spent performing manual tasks.

54. As also described above, Defendants failed to compensate Plaintiff with all wages owed on at least as frequently as a weekly basis, in violation of NYLL § 191(1)(a).

55. As a result, Plaintiff is entitled to liquidated damages in an amount equal to 100% of each late payment, as well as interest and attorneys' fees.

### FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Furnish Proper Wage Notice in Violation of the NYLL*

56. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

57. NYLL § 195(1) requires that employers provide employees with a wage notice at the time of hire containing accurate, specifically enumerated criteria.

58. As described above, Defendants failed to furnish Plaintiff with any wage notice at hire, let alone one accurately containing all of the criteria required under the NYLL.

59. Prior to February 27, 2015, pursuant to NYLL § 198(1-b), Defendants are liable to Plaintiff in the amount of $50.00 for each workweek after the violations initially occurred, up to a statutory cap of $2,500.00.

60. On or after February 27, 2015, pursuant to NYLL § 198(1-b), Defendants are liable to Plaintiff in the amount of $50.00 for each workday after the violations initially occurred, up to a statutory cap of $5,000.00.

## DEMAND FOR A JURY TRIAL

61. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

a. A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State laws;

b. An order restraining Defendants, and any and all persons acting in concert with them, from any retaliation against Plaintiff for participation in any form in this litigation;

c. All damages that Plaintiff has sustained as a result of Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law that Plaintiff would have received but for Defendants' unlawful payment practices;

d. Liquidated damages and other statutory damages as recoverable under the FLSA and the NYLL;

e. Awarding Plaintiff his reasonable attorneys' fees, as well as his costs and disbursements incurred in connection with this action, including expert witness fees and other costs;

f. Pre-judgment and post-judgment interest, as provided by law; and

11

    g.    Granting Plaintiff other and further relief as this Court finds necessary and proper.

Dated: New York, New York
September 10, 2018

Respectfully submitted,

BORRELLI & ASSOCIATES, P.L.L.C.
*Attorneys for Plaintiff*
655 Third Avenue, Suite 1821
New York, New York 10017
Tel.    (212) 679-5000
Fax.   (212) 679-5005

_____
POOJA BHUTANI, ESQ. (PB 1024)
ALEXANDER T. COLEMAN, ESQ. (AC 8151)
MICHAEL J. BORRELLI, ESQ. (MB 8533)